595 So.2d 409 (1992)
Danny GAYTEN
v.
STATE of Mississippi.
No. 89-KA-1195.
Supreme Court of Mississippi.
February 19, 1992.
*411 Robert D. Underwood, Brookhaven, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
BANKS, Justice, for the Court:
On petition for rehearing the opinion previously entered is withdrawn and the following is the opinion of the Court.

I.
This case presents nettlesome and recurring issues concerning identification and the admissibility of conversations overheard through remote listening devices. We find the identification evidence particularly troublesome. In the end, however, its credibility and weight are determinations to be made by the finder of fact.
Danny Gayten was indicted for the unlawful sale of cocaine in violation of Miss. Code Ann. § 41-29-139 (1972). Gayten was found guilty and sentenced to serve fifteen (15) years in the Mississippi Department of Corrections. He was also ordered to pay a fine of $5000.00. Gayten appeals, in forma pauperis. Finding his contentions without merit, we affirm.

II.
Agent Frazier of the Mississippi Bureau of Narcotics obtained information from an informant, Harvey Sutton Jr., that Danny Gayten was selling narcotics from his residence which he shared with his mother, brothers and sisters. During a surveilled operation by the Mississippi Bureau of Narcotics, Mark Anderson, an undercover agent from the McComb Police Department, *412 purchased $50.00 worth of cocaine from an individual believed to be Danny Gayten. Two narcotic agents, Ronnie Frazier and Phillip O'Brien, observed Officer Anderson and the informant, Sutton, enter the Gayten residence. Officer Anderson was wired so that Agents Frazier and O'Brien could overhear the conversations occurring inside the house. Neither agent observed any transactions, drug related or otherwise, which occurred inside the house or saw any individuals other than Officers Anderson and Sutton.
Officer Anderson went inside the house with Sutton. Officer Anderson had never before seen Danny Gayten. After having a short conversation with two persons, Officer Anderson went to the kitchen and made a $50.00 purchase of cocaine from one of them. Then, he and Sutton left. The entire drug deal took approximately fifteen minutes.
After the drug transaction, Officer Anderson described the person from whom he purchased cocaine in a report by describing the person's clothes and describing the person as "20 to 22 years of age, five eight to five ten, 185 pounds, haircut real close to the scalp." Officer Anderson did not participate in Danny Gayten's arrest and at no time saw Danny Gayten until trial a year and four months later.
At trial, both Agents Frazier and O'Brien testified that they knew Danny Gayten, were surveillance officers listening by wire tap to the drug buy and "worked" this drug case against Danny Gayten. However, neither agent saw Danny Gayten in the Gayten house on May 11, 1988, or saw Danny Gayten sell cocaine to Officer Anderson.
Agent Frazier testified, over a hearsay objection, to conversations he overheard through the wiretap worn by Officer Anderson while making the drug buy. Agent Frazier testified that when the informant and Anderson entered the house, a person told the informant that if he, the informant, were alone, he would have sold him some drugs. However, that person refused to sell to Officer Anderson.
Then, a second person, whom Agent Frazier could not identify, struck up a conversation with Officer Anderson. Officer Anderson talked about some trophies on the mantel and asked whether the unidentified person played football at Brookhaven High. The second unidentified person, then, indicated that he would deal with Officer Anderson. The person asked Officer Anderson what he wanted, and Officer Anderson replied, "some caine." Soon after, Agent Frazier observed Officer Anderson leave the Gayten house. At no time during the conversation in the house was Danny Gayten's name mentioned.
Officer Anderson later testified and identified the defendant, Danny Gayten, as the person from whom he purchased the cocaine. Officer Anderson corroborated Agent Frazier's recollection of the conversation which occurred inside the Gayten residence.
On cross-examination, it was brought out that Officer Anderson did not know Danny Gayten prior to the incident in question. Anderson had not previously seen the person, or a picture of him. He was not asked to identify him, either by picture or in person, after the drug buy until a year and four months later when he testified at trial. Officer Anderson testified that on the night of the drug buy he attempted to identify the seller by name by engaging the person in a conversation about some trophies sitting on the mantel and asking whether the person played football at Brookhaven High. Anderson admitted that he did not look to see whose names were on the trophies. Though not written in Officer Anderson's description of the person from whom he purchased cocaine, Officer Anderson contended that he had also noticed for purposes of later identification that the subject was capable of growing a full beard as evidenced from shaving bumps on his chin and that he had wavy-type hair. Anderson testified that he went into the buy situation knowing that he would have to identify the seller and paid particular attention to the seller's face and characteristics in order to be able to do so. Officer Anderson was shown a photograph and asked to identify it and he stated that it was possibly the *413 photograph of a Gayten brother. He stated positively, however, that whether the person on trial was Danny or Willie or someone else, he was definitely the person who sold him the cocaine.
The informant, Sutton, who accompanied Anderson and knew Danny Gayten, was no help to the state on the identification issue. Sutton testified that he did not introduce Officer Anderson to Danny Gayten and at no time saw Danny Gayten during the drug buy. Sutton claimed to have seen Officer Anderson enter the back of the house, but that he did not see the person with Officer Anderson and only had assumed that it was Danny Gayten.
When the state rested, Danny Gayten moved for a directed verdict on grounds that the state did not meet its burden of proof. In particular Danny Gayten alleged that Officer Anderson's identification was not adequate evidence for a jury to find beyond a reasonable doubt that Danny Gayten was the person who sold Officer Anderson cocaine. The court overruled the motion.
Danny Gayten then put on his case-in-chief. Danny first showed that he has eight brothers, some of whom are close in age and resemble Danny. He then elicited testimony from three witnesses to the effect that he was in Slidell, Louisiana, on May 11, 1988.
At the conclusion of the evidence Danny Gayten was convicted and sentenced to fifteen years. Danny Gayten, then, made a post trial motion for a new trial. The trial court overruled the motion.

III.
On appeal Danny Gayten first contends that the trial court erred in overruling Gayten's motion for a new trial because of improper remarks made by the prosecution. During closing argument, the following exchange occurred:
[By The State:] I find it ironic that counsel has based his  seemingly his entire defense on the fact that Mark Anderson must be mistaken because he could not possibly remember over such a long period of time, being over a year, when, in fact, Counsel knows that he used his legislature  his membership in the Mississippi legislature, his privilege as a member of the legislature, to continue this case. I hope you folks don't think that the State has been sitting on its duff back here for a year or so just wasting time sitting around to try this case. The reason this case is now finally getting to you is because counsel used his privilege in the legislature 
[By Defense Counsel:] [I]'m going to object to counsel bringing up the legislature. This is misleading. That was an agreed judgment. Both the District Attorney's Office agreed to this. You are misleading these folks. Y'all had no objection to it. You can't win the case any other way, so you're going to try to mislead the jury.
By the Court: All right. Go ahead.
On appeal Gayten asserted that the trial court erred in overruling his motion for a new trial on grounds that the comments by the prosecution during closing argument were so improper as to prejudice Gayten's right to a fair verdict.
The comment made by the prosecution was improper. Gayten failed, however, to seek a ruling on the objection when the trial court instructed the state, "Go ahead." No definitive ruling was made and no corrective action was requested. Gayten thus waived this objection. Cole v. State, 525 So.2d 365, 369 (Miss. 1987); Cummings v. State, 465 So.2d 993, 996 (Miss. 1985). This assignment of error has no merit.

IV.
Danny Gayten next contends that the testimony by Agent Frazier was inadmissible hearsay. Agent Frazier testified to communications he overheard via a wiretap which Officer Anderson was wearing during the drug purchase. Agent Frazier testified to statements he heard made by the confidential informant; an unidentified male, believed to be Danny Gayten's brother, Rayray; and an unidentified person believed to have been Danny Gayten.
*414 Without question Agent Frazier at no time saw Danny Gayten on May 11, 1988. Moreover, although Agent Frazier testified that he was working this case against Danny Gayten, Agent Frazier could not have known the person who sold the drugs was Danny Gayten because there was no identification at any time until the day of trial when Officer Anderson testified, and this was after Agent Frazier had finished giving his testimony.
Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss.R.Evid. 801(c). The trial judge was correct when he noted that if the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay. Comment, Rule 801, Miss. R.Ev.; Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 701 (Miss. 1990) (Robertson, dissenting.) Undeniably, the testimony of Agent Frazier concerned out-of-court statements by persons other than himself. The threshold hearsay issue is whether Agent Frazier's testimony of what each party said was introduced to prove the truth of the matter asserted.
Agent Frazier testified to statements Agent Frazier heard made by Officer Anderson. These statements were clearly offered solely for the purpose of showing that they were said. Just as clearly, the fact that these statements were made indicates the nature of the transaction and, in fact, that there was a transaction. But, the statements are not assertions which are important because they are true. Anderson's statement to the effect that what he wanted to buy some cocaine was, in fact, not true as to the only thing that it asserts, his state of mind. What he actually wanted was for Danny Gayten to sell some cocaine giving evidence sufficient to put Danny away. The statement is not offered to prove Anderson's subjective intent or desires but rather to show what it was to which the seller responded. Generally, words which accompany and give character to a transaction are not considered hearsay. See Edward W. Cleary et al., McCormick On Evidence, § 249, at 733 (3rd ed. 1984).
The trial judge did not err in allowing Agent Frazier's testimony of statements made by Officer Anderson. Cf. Peterson v. State, 518 So.2d 632, 640 (Miss. 1987). If the statement was offered to prove the truth of the assertion, that finding would not end our inquiry. Hearsay may be admissible if it falls within a hearsay exception. See generally, Miss.R.Evid. 803. When Officer Anderson stated that he wanted "some caine," this showed Officer Anderson's then existing state of mind, including his intent, plan or motive. See Miss.R.Evid. 803(3).
Agent Frazier also testified to the comments made by the person believed to be Rayray. Again, the fact that these statements were made is what was relevant, not any truth of the matters asserted. Rayray was not on trial. The matter asserted was that he would sell cocaine to Sutton if he, Sutton, were alone. That was not a fact at issue in these proceedings. The trial judge did not err in allowing Agent Frazier to testify to the statements made by Rayray.
Agent Frazier next testified to the statements made by a person believed to have been Danny Gayten. The first statement was that of the unidentified person stating that he would deal with Officer Anderson and the second was that of the unidentified person asking Officer Anderson what he wanted. Both statements were non-hearsay. The second statement was an inquiry and therefore cannot be construed as asserting anything at all. The first statement is admissible under the hearsay rule as both an admission, deemed not hearsay by our rule. See Miss.R.Evid. 801(d)(2) as well as a 803(3) exception to the hearsay rule. It may also be deemed a statement explanatory of a transaction and admissible for the fact that it was said. It is clear that the exchange, "[I want] some `caine'" and "I will deal," or words to that effect, evince an agreement to purchase and sell cocaine without *415 regard to whether they make truthful assertions.
Generally a party's statement, when offered against him, is admissible as a statement which is "not hearsay" but rather an "Admission by Party Opponent." Miss.R.Evid. 801(d)(2). Here the complicating factor is that the witness offering the statement cannot identify the speaker. To be admitted against Danny Gayten, there had to be an identification that Danny Gayten was the person who made the statements.
In order to deem these statements admissible as admissions of a party and, more importantly, to have them meet evidentiary relevancy requirements, there must be sufficient evidence to allow a reasonable fact finder to conclude that the speaker was in fact the defendant. The trial judge had the responsibility to determine whether the identification testimony given by Officer Anderson was sufficient to make Agent Frazier's testimony admissible. Miss.R.Evid. 104(b).
The trial court did not explicitly make this finding. Having concluded that the entire conversation was admissible because the conversation was not to show the truth of the matter asserted, but only that the statements were made; the trial judge never considered whether the identification by Officer Anderson was sufficient to deem Agent Frazier's testimony relevant as against Danny Gayten.
We also conclude that the statements were admissible as non-hearsay. Moreover, we find that the trial court implicitly concluded that the identification evidence was sufficient to support the introduction of the overheard testimony when it allowed this matter to go to the jury. That is, the only evidence that Danny Gayten sold cocaine was given by Officer Anderson, and to the extent that his identification is insufficient to convince a jury that Gayten is the seller beyond a reasonable doubt, Gayten is entitled to acquittal. A finding that Anderson's identification is sufficient to allow a jury to determine guilt beyond a reasonable doubt necessarily includes a finding that that identification is sufficient to bring relevance to the overheard conversation. Finally, we conclude that this finding, which we infer from the record, was not error.

IV.
Our preliminary inquiry regards the nature of the court's responsibility with regard to preliminary questions of admissibility under Miss.R.Evid. 104[1]. "By its terms, the rule involves a situation in which `the relevancy of evidence depends upon the fulfillment of a condition of fact... .'" United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir.1991). In resolving initial questions of conditional relevancy of admissibility of evidence, a judge determines whether or not foundation evidence is sufficient to support a reasonable finding by a jury of the fulfillment of the condition; if such prima facie showing is made, then the court admits the evidence for consideration by the jury. Huddleston v. United States, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), Maddox, 944 F.2d 1223, United States v. Anderson, 933 F.2d 1261, 1273, (5th Cir.1991), United States v. Williams, 900 F.2d 823, 826 (5th Cir.1990); See also People v. Garner, 806 P.2d 366 (Colo. 1991); accord, Burlington Northern R. Co. v. Hood, 802 P.2d 458 (Colo. 1991) (in determining the admissibility of conditionally relevant evidence, trial court is to ascertain whether or not a jury could find by preponderance of the evidence that the conditional fact has been established).
The Notes of the Advisory Committee on Proposed Rules provide the following example and explanation to Rule 104 of the Federal Rules of Evidence.

*416 In some situations, the relevancy of an item of evidence, in the large sense, depends upon the existence of a particular preliminary fact. Thus when a spoken statement is relied upon to prove notice to X, it is without probative value unless X heard it. Or if a letter purporting to be from Y is relied upon to establish an admission by him, it has no probative value unless Y wrote or authorized it.

* * * * * *
If preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision (a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries. Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.
Fed.R.Evid. 104(b) advisory committee's note. (Emphasis supplied.)
As can be readily seen, the example given emphasis in the above quote is very nearly on all fours with the situation facing the court below. The question before the trial court was whether the later identification offered by Anderson supported "a finding of fulfillment of the condition," the condition being, that it was in fact the defendant who made the statement to the effect that he would deal with Anderson's request for "some 'caine."
The identification evidence in this case is amenable to considerable doubt. The evidence showed that (1) law enforcement officers believed Danny Gayten was selling cocaine; (2) Officer Anderson was told before he entered the Gayten residence that he was going to purchase cocaine from Danny Gayten; (3) prior to, during or after the drug buy there was no identification made to ensure that the person selling cocaine was in fact Danny Gayten; (4) a year and four months passed before trial; (5) Officer Anderson pointed to the defendant as being Danny Gayten, when, in fact, Officer Anderson did not know Danny Gayten and could not state from personal knowledge that the defendant was Danny Gayten but could only state at trial that the defendant was the person who sold him cocaine; and (6) Officer Anderson's identification was based in part on identification marks he noticed on the person selling cocaine which he failed to record in his report immediately following the incident.
In considering the sufficiency of identification testimony we are guided by the familiar standards enunciated in Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Hansen v. State, 592 So.2d 114, 138 (Miss. 1991).
"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the [defendant] at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
Biggers, 409 U.S. at 199, 93 S.Ct. at 382.
We begin with the knowledge that the identification in question is one where the witness is asked to identify a person previously unknown to him. This is not unusual in criminal cases. Many convictions hinge on the identification of strangers by both uninvolved witnesses and victims. In assessing such identifications, referring to the Biggers factors, we first look at the opportunity to observe. A drug transaction such as this takes no longer than five or ten minutes. As crimes go, that is a relatively long period of time. A witness or victim of robbery may have only a few seconds. See, e.g., Wilson v. State, 574 So.2d 1324 (Miss. 1990) (Two minutes); Johnson v. State, 359 So.2d 1371, 1373 *417 (One minute). Moreover, in these latter instances the witness/victim's attention may be distracted by the presence and threat of a weapon. Id. Here the opportunity to observe came in the relative calm of a simple transaction where no weapon or other threat to the safety of the observer confounded observation.
This is an important consideration for the second Biggers factor, the degree of attention paid by the witness. Not only was there no threat to divert Anderson's attention, unlike a passerby or bystander who happens upon a crime scene, Anderson had every reason to attend closely with his seller. He was there to make a case against this person and knew that he would later have to make an identification. He testified that he is trained to and did pay close attention to detail for that very reason.
The third factor is more problematic. The description given Anderson at the time of the occurrence lacks detail. He added factors at trial that he did not include in his original description. This is not without ready explanation. The officers to whom Anderson gave a description knew Danny Gayten and had every reason to believe that Danny made the sale. They sought no unknown stranger. It is understandable that they would not press for additional details in the description. Moreover, though lacking in distinguishing detail the prior description was not shown to be inaccurate with regard to defendant's appearance at the time of the observation. That is, any difference between the way defendant was described and the way he appeared at trial did not involve immutable characteristics but rather features which were readily changeable such as hair style. In sum, while the description given by Anderson, when viewed in isolation, is not so detailed as to give great confidence in the accuracy of his identification, neither is it so contradictory as to destroy that identification. See, Kimbrough v. State, 379 So.2d 934 (Miss. 1980) (Prior misidentification of defendant's half-brother after identifying defendant where both were in the same lineup did not destroy in-court identification).
The fourth factor to be considered is the degree of certainty exhibited by the witness. Anderson seemed dead certain. He could not say that the defendant was Danny Gayten but that is not the issue. The issue is who sold the cocaine. Anderson was positive that the person on trial, whether his name was Danny, Willie or whatever, was the person who sold him the cocaine. Here too there is a ready explanation, but in favor of Gayten. It requires little imagination for a witness bent on conviction at all cost to positively identify as the perpetrator the person sitting at the counsel table with his lawyer. In the very least the conditions under which the identification is made are the most suggestive imaginable. Under these circumstances, Anderson's degree of certainty might not be given much weight by a jury. We cannot presume him to be a perjuror, however. The certainty exhibited by him was a factor to be given such weight as a fair minded juror might accord it.
Of the factors enumerated, the most damaging here, by far, is a consideration of the length of time between the opportunity to observe and the identification. Fourteen months is a very long time between observation and identification of a stranger. This writer has been unable to find any case in this jurisdiction in which the time elapsed between observation and initial identification was as long as fourteen months. It is axiomatic that memory fades with time. This factor must be viewed together with all other factors. For example, in U.S. v. Drodgas, 748 F.2d 8 (1st Cir.1984), a lapse of five years was deemed insufficient to destroy a confession. There, however, the witness was engaged as an informant in a conspiracy over a period of time in which he had an opportunity to observe the defendant on several occasions. The combination of opportunity to observe, degree of attention, accuracy of description and certainty was held to overcome the passage of time. Id.
The evidence with regard to those factors in the instant case, viewed in the light most favorably to state, must be *418 deemed as sufficiently strong to allow a fair-minded jury to accept them as overcoming the taint of the passage of time.
It must be noted that we are considering the reliability of an identification under unusual circumstances. Usually there is some kind of identification before trial. Indeed, it is a pre-trial identification process that gives rise to most of the litigated questions concerning identification. That is, the identification issue is usually whether a prior improperly suggestive identification process taints the in-court identification. The Biggers factors are then evaluated with a view toward determining whether the testimony appears sufficiently reliable to overcome the taint of the prior improperly attained identification. See. e.g., Foster v. State, 493 So.2d 1304 (Miss. 1986); Poole v. State, 216 So.2d 425 (Miss. 1968).
Here the in-court identification is the only one made. The question then is whether familiar standards of due process permit a conviction where the only identification ever made suffers from the suggestiveness of being directed at an individual who the witness knows has been arrested, indicted and brought to trial on the charge in question. We note that Gayten, represented by counsel, took no steps to avoid a suggestive identification forum. He did not request that others be seated at the counsel table with him or that he be seated at some place other than the counsel table before Anderson was brought into the courtroom and asked to identify him. Moore v. Illinois, 434 U.S. 220, 231 fn. 5, 98 S.Ct. 458, 466 fn. 5, 54 L.Ed.2d 424 (1977). He sought no pre-trial test of the identification. If, at trial suggestiveness is thought to be a problem, the defendant must ordinarily take steps to avoid the problem before claiming a due process violation. Our evaluation of the evidence in the instant case leads us to conclude that the evidence was sufficient to allow a fair minded jury to credit Anderson's identification under the beyond a reasonable doubt standard.

V.
For the foregoing reasons, we affirm.
CONVICTION OF SALE OF A CONTROLLED SUBSTANCE (COCAINE) AND SENTENCE OF FIFTEEN (15) YEARS AND FINE OF $5,000 AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
NOTES
[1] Rule 104(b) provides in relevant part,

When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. If offeror fails to meet the condition, the objector may request the jury be instructed to disregard the evidence, however, such request shall not be a prerequisite to motion for mistrial... .