*985 KITCHENS, Justice,
concurring in part and in result:
¶ 56. With respect, I concur in part and in the result. I agree with the plurality’s decision to reverse the judgment and remand this case for a new trial. I write separately to provide analysis of the reversible error that occurred in this case when the trial court prevented Lomax’s cross examination of S.C., the lead prosecution witness, and of Erin Gowen, the forensic interviewer, about the statements that S.C. made during a break in the forensic interview. I am in agreement with the plurality’s finding that this was error. But I would find also that the trial court erred by excluding the videotape of S.C.’s prior inconsistent statements. I would hold that these errors violated Lomax’s federal and state constitutional rights to cross examine the witnesses against him in full. U.S. Const, amend. VI; U.S. Const, amend XIV; Miss. Const, art. 3, § 26.
¶ 57. During her forensic interview at the Children’s Advocacy Center, S.C. provided Gowen a description of her alleged rape by Lomax. The video of the interview reveals that, near its end, Gowen briefly left the room, leaving S.C. alone. What happened next is truly bizarre. S.C. began talking to herself, using her hands as if they were sock puppets that were arguing with each other, with each hand taking a different side of the argument, and with S.C.’s providing, in two different vocal pitches, the verbal dialogue for the “conversation” in which her hands were engaged. Several times during this dialogue,[4] S.C. stopped arguing with herself and clutched her head in apparent frustration. Some of what S.C. said is unintelligible, but the following was discernible: “stop. no. stop, no,” “this girl is going to ruin the relationship,” “you should just tell her that ... you should just tell her the truth,” “but if I tell her the truth then like,” “what are you gonna do,” “I don’t know, I was going to maybe, I should tell her what’s going on because she’s gonna think ,..,” and “I just need to hurry up and get out of the room and then text her and tell her the truth.”
¶58. The prosecution objected to Lo-max’s attempt to cross examine S.C. about this incident. Lomax argued that, on the video, S.C. had made prior inconsistent statements that affected her credibility and that he was entitled to impeach her with them. Before ruling, the trial court directed Lomax to make a proffer of the testimony. During the proffer, S.C. said she remembered having made the statements, but she denied that the statements had to do with her rape allegation against Lomax. She testified that the statements concerned another situation involving a friend. After the proffer,' the trial court viewed the video.
¶59. Lomax argued that S.C.’s statements on the video were relevant to S.C.’s credibility and that a reasonable person could believe the statements referred to the rape allegations which S.C. had discussed with Gowen just prior to making the statements. Lomax urged that the statements were prior inconsistent statements and that the video of the statements could be used for impeachment under Mississippi Rule of Evidence 613. The trial court excluded the statements, stating that S.C.’s statements were “unintelligible, emotional ramblings” and that the few words the court heard were irrelevant. The trial court also excluded the statements under Mississippi Rule of Evidence 403 as more prejudicial than probative. M.R.E. 403. Later, Lomax attempted to *986 question Gowen about S.C.’s bizarre behavior and her recommendation that S.C. needed a mental .health assessment. The trial court denied this , line of questioning on the ground of relevance.
¶ 60. On appeal, Lomax argues that the trial court’s ruling impermissibly limited the scope of cross examination and violated his state and federal, constitutional rights to full cross examination of witnesses. “Cross-examination is a matter of right. It is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states via the Fourteenth Amendment." Black v. State, 506 So.2d 264, 266-67 (Miss.1987) (citing Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). “The right is secured independently by the confrontation clause of this state’s constitution....” Black, 506 So.2d at 267 (citing Miss. Const. art 3, § 26). The scope of the right is wide; it is “coextensive with the limits of relevancy measured by the issues.” Black, 506 So.2d at 267. Indeed, the “light of confrontation ‘extends to and includes the right to fully1 cross' examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony.’ ” Scott v. State, 796 So.2d 959, 964 (Miss. 2001) (quoting Myers v. State, 296 So.2d 695, 700 (Miss.1974)).
¶ 61. Mississippi Rule of Evidence 611(b) embraces these principles, providing that “[c]ross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.” M.R.E. 611. Under this rule, and under the federal and state constitutions, “one accused of a crime has the right to broad and extensive cross-examination of the witnesses against him, and especially is this so with respect to the principal prosecution witness.” Suan v. State, 511 So.2d 144, 148 (Miss.1987) (emphasis added). Mississippi Rule of.Evidence 613(b) provides, in pertinent part, that “[e]xtrinsic evidence of a prior inconsistent, statement by a witness is not admissible unless the witness is afforded an opportunity .to explain or deny, the same and the opposite party is afforded an. opportunity to interrogate him thereon, or the interests of justice otherwise require.” M.R.E. 613(b).
¶ 62. This Court reviews a trial court’s admission or exclusion of evidence for abuse of discretion. Hartfield v. State, 161 So.3d 125, 130 (Miss.2015). The trial court barred Lomax from cross examining S.C. about her prior inconsistent statement on the ground of relevance. Mississippi Rule of Evidence 401 states that “ ‘relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. Lomax argued that S.C.’s statements on the video were relevant to her credibility. Certainly, S.C.’s statements were relevant to her credibility if she was- talking about the rape at issue in this case, the only subject that had' been under discussion mere moments earlier, immediately prior to the interviewer’s departure from the room. Mississippi Rule of Evidence 104(b) is the rule that applies when the relevance of evidence is eonditioñed on the establishment of a certain fact. M.R.E. 104(b).' Rule 104(b) states, in part, that:
When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, of subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the'condition. If the offer- or fails to mee,t.,the condition, the objector may request the jury be instructed *987 to disregard the evidence; howevér, such request shall not be a prerequisite to motion for mistrial.
M:R.E. 104(b).
¶ 63. The United States Supreme Court has outlined the trial court’s role under Federal Rule of Evidence 104(b)," stating:
In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the ease and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.
Huddleston v. United States, 485 U.S. 661, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Thus, under Rule 104(b), the determination of the existence of the condition of fact is for the jury, while the trial court’s function is limited to determining whether there is sufficient evidence to enable the jury reasonably to find that the fact existed. Id., 108 S.Ct. 1496. To illustrate this principle, I briefly relate the facts of Hud-dleston. ' In Huddleston’s trial for selling stolen ■videotapes, the prosecution sought to introduce prior bad acts evidence concerning Huddleston’s sale of television sets to show that, because Huddleston previously had sold stolen merchandise, he had known the videotapes were stolen. Id. at 686,108 S.Ct. 1496. But Huddleston’s pri- or sale of the television sets was relevant only if they had been stolen. Id. After examining all of the evidence surrounding the sale of the sets, the Supreme Court held that the evidence was sufficient because “the jury reasonably could have concluded that the televisions were stolen, and the trial court therefore properly allowed the evidence to go to the jury” under Rule 104(b). Id at 693, 108 S.Ct. 1496. This Court adopted Huddleston’s procedures for determining conditional relevance under Rule 104(b) in Gayten v. State, 595 So.2d 409, 415 (Miss.1992).
¶ 64. In this case,' S.C.’s statements on Videotape were relevant to her credibility if they concerned the rape at issue. The trial court made a finding of fact that the statements- did not concern the rape at issue. This was error. Under Huddleston, the trial court making a conditional relevance determination under Rule 104(b) is not permitted to make the preliminary fact finding, On the contrary,' the trial court’s role is limited to detérmining whether there is sufficient' evidence to enable the jury to find that the fact existed. Id. at 690, 108 S.Ct. 1496. In making that determination, “the trial court must consider all evidence presented to the jury.” Id. at 690-91, 108 S.Ct. 1496.
¶ 65. It is abundantly clear that sufficient evidence existed in this case for the jury reasonably to have found that S.C.’s statements concerned the alleged rape at issue. S.C. made the statements near the end of the forensic interview in which she discussed the event at length and in detail. And when Gowen left the room, S.C. immediately began talking to herself, grabbing her head in apparent frustration, and heatedly debating with herself, using her hands as props, about whether she should “tell her the truth.” A reasonable jury could conclude from all of the evidence that it was more likely than not that S.C. had been talking about,the alleged rape, not . about some unrelated situation. Therefore, the trial court abused its discretion by preventing Lomax from cross examining S.C, about these statements,
¶ 66. Further, the trial court should have allowed Lomax to. introduce as extrinsic evidence the portion of the videotape that contained the statements. M.R.E. 613. The plurality observes that, if a wit *988 ness admits to having made a prior inconsistent statement, extrinsic evidence of that statement is not admissible, and the determination of whether a- statement is inconsistent is within the trial court’s discretion. Plur. Op. at ¶¶ 46-47 (citing Foster v. State, 508 So.2d 1111, 1119 (Miss. 1987), overruled on other grounds by Powell v. State, 806 So.2d 1069, 1080 (Miss. 2001) (citing United States v. Greer, 806 F.2d 556 (5th Cir.1986)); State v. St. Germain, 369 A.2d 631, 632 (Me.1977)). I would find that the trial court abused its discretion by excluding the video of S.C.’s statements. While S.C. acknowledged in her proffer that she had made the statements, she. did not admit that they were inconsistent with her trial testimony. The video reveals that, after giving a forensic interview stating that Lomax had raped her, S.C. began arguing with herself about whether she should tell the truth. The trial court abused its discretion by finding that S.C.’s statements were consistent with her trial testimony.
¶ 67. I would hold that the trial court invaded the province of the jury by weighing S.C.’s credibility. See Gayten, 595 So.2d at 416 (“[i]f preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision [104](a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries”) (quoting F.R.E. 104(b),' advisory committee’s note). And the matter of S.C.’s credibility was pivotal in this case. Lomax admitted having had consensual sex with S.C., and S.C.’s physical examination did not rule out consensual sex because it revealed no physical injuries. Further, the DNA evidence in this case was weak. The forensic DNA analyst testified that a partial profile taken from the handle of the knife that Lomax allegedly used to subdue S.C. implicated Lomax, but with the relatively high frequency of one in every 3,804 persons. S.C.’s DNA also was found on the knife, raising the possibility that S.C. herself transferred Lomax’s DNA to the knife after having had consensual contact with him. Thus, the jury’s belief that S.C. was telling the truth about the rape accusation was vital to the prosecution’s case against Lomax.
¶ 68. Due to the strong probative value of S.C.’s statements as impeachment evidence, the trial court erred by finding them more prejudicial than probative under Mississippi Rule of Evidence 403. Rule 403 provides that, “[ajlthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E. 403. S.C.’s statements could have been more prejudicial than probative only if S.C. had been talking about an incident other than the alleged rape. But if S.C. had been talking about the incident under consideration, the statements were so highly probative of her credibility that they could not have been more prejudicial than probative. And because, under Rule 104(b), it was the jury’s role to determine whether S.C. was talking about the alleged rape, the trial court’s Rule 403 ruling was erroneous.
¶ 69. The trial court also erred by preventing Lomax from questioning Gowen about S.C.’s behavior on the video. Gowen testified on behalf of the State about the contents of S.C.’s forensic interview. She testified that S.C.’s interview was consistent with that of a child-who had been abused. On cross examination, the trial court sustained the State’s objection to Lomax’s attempt to question Gowen about her recommendation that S.C. should undergo a mental health assessment. The *989 trial court ruled that this evidence was not relevant and that it was more prejudicial than probative. During a proffer, Gowen testified that, due to S.C.’s “flat affect” during the interview and the bizarre behavior S.C. had exhibited on the video, she had recommended that S.C. undergo a mental health assessment.
¶ 70. A witness’s mental state is relevant for impeachment purposes, and a defendant may challenge a witness’s credibility with relevant evidence concerning mental defects. United States v. Jimenez, 256 F.3d 330, 343 (5th Cir.2001). Because Gowen’s testimony that S.C.’s behavior warranted a mental evaluation went to S.C.’s mental capacity, it was highly relevant to S.C.’s credibility. Gowen’s testimony on direct that S.C.’s interview was consistent with that of a child who had been abused bolstered S.C.’s credibility. On cross, Lomax had a right to attack S.C.’s credibility by asking Gowen about her recommendation of a mental health assessment. And, due to the strong probative nature of Gowen’s opinion, the trial court abused its discretion by deeming it more prejudicial than probative under Rule 403.
¶ 71. Moreover, the exclusion of S.C.’s statements and Gowen’s opinion implicates the Rule of Completeness. Mississippi Rule of Evidence 106 provides: “[w]hen a writing or recorded statement or part therof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.” M.R.E. .106. Although the video of the interview was not admitted into evidence, Gowen recited material portions of the interview to the jury and opined that S.C.’s interview was consistent with abuse. Because the trial court excluded S.C.’s statements, the video, and Gowen’s opinion about S.C.’s bizarre behavior, the jury received an incomplete picture of what had occurred at the Children’s Advocacy Center. In Sanders v. State, 237 Miss. 772, 776-77, 115 So.2d 145, 147 (1959), this Court held that, under the Rule of Completeness, an officer’s testimony about his interview of the defendant allowed the defendant to introduce other parts of the tape recording of the interview. Sanders stands for the proposition that a party cannot avoid the Rule of Completeness by having a witness testify about the contents of an interview rather than admitting a writing or recording of that interview. Indeed, the comment to Rule 106 recognizes that “[u]nder Mississippi case law the rule of completeness is extended ... even to oral statements.” M.R.E. 106 cmt. (citing Sanders, 237 Miss. 772, 115 So.2d 145). In fairness, because the State introduced the contents of the interview through Gowen’s testimony, the video of S.C.’s behavior and Gowen’s. opinion about that behavior should have been admitted to provide the jury a complete picture of what occurred. M.R.E. 106.
¶ 72. In conclusion, the video of S.C.’s forensic interview revealed highly unusual behavior and statements that cast substantial doubt on the credibility of the State’s lead witness. The trial court abused its discretion by misapplying Rule 104(b), erroneously preventing Lomax from cross examining S.C. about her statements and erroneously preventing the introduction of the videotape as extrinsic evidence of the prior inconsistent statements. The trial court also abused its discretion by preventing Gowen from explaining that it was S.C.’s bizarre behavior that had caused her to recommend a mental evaluation. These errors amplified each other and gave the jury a misleading impression of S.C.’s credibility and mental stability. The errors violated Lomax’s federal and state constitutional rights to cross examine fully all witnesses against him on every material *990 point bearing on their credibility, U.S, Const.' amend. VI.;- U.S, Const, amend XIV; Miss. Const. art. 3, § 26; Scott, 796 So.2d at 964 (quoting Myers, 296 So.2d at 700). Therefore, I would find that the trial court’s exclusion of S.C.’s statements, the video of those statements, and Gowen’s opinion was reversible error. M.R.E. 103(a).
' KING AND COLEMAN, JJ., JOIN THIS, OPINION. DICKINSON, P.J., AND MAXWELL, J., JOIN THIS OPINION IN PART.

. While I use the term dialogue to refer to the sock puppet “conversation,'' because S.C. was talking to herself, the word monologue may be more apt.