Billy Earl Smith was convicted of murder and aggravated assault in the Circuit Court of Rankin County and now appeals. The story of this unfortunate man and his still more unlucky victims is one of the most depressing tales we have ever been called upon to recount.
Billy Earl Smith appeared at the State Mental Hospital at Whitfield shortly before midnight on April 30, 1976. He had a history of mental disorder and his aunt and uncle had brought him in for "voluntary" admission as a patient. Upon his arrival Smith encountered a security guard, John M. Havard, who directed him to the admissions building.
When Smith reached the admittance area he was met by Gail Burns, a hospital employee, and ordered to change into hospital garb. While removing his clothes, Smith suddenly produced an ice pick and a knife. The ice pick fell to the ground but Smith stabbed Burns twice with the knife. According to the autopsy report, Burns died within seconds. Smith then turned to face Havard, who had rushed forward in a vain attempt to help Burns. Smith stabbed him three times before fleeing from the building. He was apprehended some six hours later hiding in a patch of weeds on the hospital grounds.
As a result of his injuries, Havard lost the use of one arm and has not been able to work since.
In June, C. Mims Edwards, a psychiatrist at Whitfield, prepared an evaluation of Smith in which he concluded that Smith suffered from paranoid schizophrenia.
On July 8, 1976, the Rankin County Grand Jury indicted Smith on charges of murder and aggravated assault.
On January 28, 1977, the Circuit Court of Rankin County issued an order stating that after having received evidence from Dr. Donald Gill, a psychiatrist, it had concluded that Smith, being insane, was not competent to stand trial. It was further ordered that "Smith should not be discharged, but remanded to custody . . . for proceedings according to the law providing for persons of unsound mind." The record of the ensuing proceedings is not before this Court, but we do know that from that day Smith was continuously confined at Whitfield. On February 9, 1977, a review board declared that he was too dangerous to be released.
Matters were held in abeyance until May 1982 when Dr. Helen Robertson, a staff member of the hospital, voiced an opinion that Smith was now competent to stand trial. Another staff member, Dr. Margie Lancaster, concurred in this opinion in December of that year. At this time, hospital officials, uncertain as to the status of the charges against Smith, began to make inquiries of the circuit court. The upshot *Page 1391 
was that on February 18, 1983, Smith was brought before the court and arraigned, pleading not guilty to both charges. On June 21, 1983, a staff conference was held at Whitfield; the staff unanimously found that Smith was now competent to stand trial.
On September 23, 1983, Smith filed a special demurrer to the indictment. This demurrer was based on the fact that 2,301 days elapsed between his indictment and arraignment. After a hearing before Judge R.L. Goza, the special demurrer was denied. On September 26, 1983, after another hearing before Judge Goza, a jury found Smith competent to stand trial. Trial was held in the Circuit Court of Rankin County; a jury found Smith guilty as charged on both counts. He was sentenced to life imprisonment for the murder of Burns and twenty years' imprisonment for the aggravated assault on Havard, the sentences to be served consecutively.
The only assignment of error that merits any close attention is Smith's argument that because almost seven years elapsed between his indictment and his arraignment, he was effectively deprived of his Sixth Amendment right to a speedy trial.
The leading case on the right to a speedy trial is Barker v.Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case, the Court recognized that no specific length of time could be fixed for determining whether or not the right to a speedy trial had been abridged. Barker, 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113. Instead, the Court prescribed a balancing test in which the conduct of the prosecution and the defendant are both considered. The principal factors affecting this evaluation are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 430, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Mississippi applies the Barker doctrine, as it is bound to do.See, e.g., Burgess v. State, 473 So.2d 432, (Miss. 1985);Bailey v. State, 463 So.2d 1059 (Miss. 1985); Perry v. State,419 So.2d 194 (Miss. 1982).
The first factor affecting the analysis is the length of the delay. In the present case there can be no question that the delay involved, almost seven years between indictment and arraignment, was quite significant. However, establishing the fact of the delay does not end the inquiry, because delay alone is not sufficient to support a finding that the right to a speedy trial has been denied. U.S. v. Doe, 642 F.2d 1206, 1208 (10th Cir. 1981), cert. denied, 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981). Appellant is incorrect in citing Perry v. State,supra, for the proposition that a long delay between the indictment and arraignment necessarily results in the denial of a speedy trial. Perry in fact said, "Obviously, if arraignment is delayed for a long period of time following an arrest or indictment or charge, an accused's right to a speedy trialcould be denied. . . ." Perry, 419 So.2d at 198 (emphasis added).
The second factor in the Barker test is probably the most important for purposes of the present case. It concerns the reasons for the delay. Since Barker most courts have tended to be liberal in finding reasons for delay adequate, at least in cases where the state has not deliberately delayed the trial for purposes of gaining unfair advantage. There has been general agreement that the delay is excusable, if it is attributable to the defendant. This is obviously the case if the defendant has deliberately done something to cause the delay. See e.g., Grayv. King, 724 F.2d 1199, 1203 (5th Cir. 1984); Bailey v. State,463 So.2d 1059, 1062 (Miss. 1985). In Foran v. Metz,463 F. Supp. 1088, 1095 (S.D.N.Y. 1979), aff'd 603 F.2d 212 (2d Cir. 1979), cert. denied 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 38 (1979), the defendant, by means of various motions, raised issues which "precluded" the case coming to trial. The court held that the defendant could not complain of the delay because of his role in inducing it. See also, U.S. v. Wyers, 546 F.2d 599, 602 (5th Cir. 1977). (delay excusable, if "beyond the court's control").
One court summarized the process by saying that in evaluating the purposes of the delay the primary focus was on "not prejudice, but culpability." U.S. v. Avalos, *Page 1392 541 F.2d 1100, 1113 (5th Cir. 1976), cert. denied 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). Of special interest in the present case is U.S. ex rel. Fitzgerald v. Jordan,747 F.2d 1120 (7th Cir. 1984). Here, the defendant's trial was delayed for eight months because another court had ruled that Illinois' automatic juvenile transfer statute was unconstitutional. The Seventh Circuit held that since juvenile transfer would have violated the defendant's constitutional right, continuing to hold him for eight months pending trial was not a violation of the Sixth Amendment. 747 F.2d at 1128-29.
In the present case, the trial court was acting for the best of motives and for very good reasons in delaying Smith's trial. The court very sensibly observed that it would have been a violation of Smith's rights to conduct his trial while he was insane. While Smith did not deliberately cause the delay, it was attributable to his condition and certainly beyond the control of the court. On the whole, the causes of the delay do not seem unreasonable.
The third factor in the Barker analysis is the defendant's demand or assertion of his right. Implicit in this factor is the requirement that the state be placed on notice that the defendant is asserting his right. The undisputed testimony at trial showed that the staff at Whitfield did not notify the court of Smith's competence to stand trial until June 21, 1983. The trial was set less than six weeks later. Obviously, the state cannot be said to be deficient in this regard.
The final factor in the Barker analysis is the degree of prejudice resulting to the defendant from the delay. Ordinarily, delay of almost seven years could be presumed to result in some prejudice to the defendant, if only through the fading of memory. However, where the delay is due to the defendant's insanity, the situation is obviously different. It is ludicrous to argue that an insane defendant is better fitted to conduct his defense than a sane one.
In short, the delay in prosecution, lengthy though it was, came about in good faith and for perfectly good reasons. Under the unusual circumstances of this case, it cannot be said that Smith was denied his constitutional right to a speedy trial. The judgment of the Circuit Court must be, and hereby is, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
HAWKINS, J., dissents.