843 So.2d 51 (2002)
Robert ANTHONY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00580-COA.
Court of Appeals of Mississippi.
September 17, 2002.
Rehearing Denied December 3, 2002.
Certiorari Denied April 17, 2003.
*52 Phillip Broadhead, Thomas M. Fortner, Jackson, attorneys for appellant.
Office of the Attorney General, by Jean Smith Vaughan, attorney for appellee.
Before SOUTHWICK, P.J., LEE and MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. A circuit court jury found Robert Anthony guilty of murder. He was sentenced as an habitual offender. On appeal, Anthony argues that his constitutional right to a speedy trial was abridged, that evidence was erroneously admitted, and that the court should have directed a verdict for him or granted a new trial. We *53 find Anthony's arguments lack merit and affirm.

STATEMENT OF THE FACTS
¶ 2. On March 22, 1999, between 11:00 p.m. and midnight, Robert Anthony threatened to kill his girlfriend, Brenda Harper, if she interfered with his tax refund check. He was quoted as saying "if I catch you going to that mailbox, I am going to kill you." The next day, Harper was killed by a gunshot wound to the head. A witness reported that between 5:00 and 5:45 p.m. he heard the gunshot and saw a woman's body being put into a dark colored sport utility vehicle with wood grain panels by a "tall thin black man." Harper was later discovered, dying but not yet dead, at the side of an abandoned house.
¶ 3. A few days later, Anthony was arrested for Harper's murder. An indictment was returned on October 12, 1999, but the trial was not held until May 21-23, 2001. The State's case against Anthony was largely circumstantial. There was uncertainty about the make of the assailant's vehicle, though all witnesses agreed that it was a dark colored sport utility vehicle with paneled sides. Investigators found traces of Harper's blood in Anthony's Jeep, but could not establish how long it had been there. A tire track impression from the scene where Harper was found did not match Anthony's vehicle. Safety glass consistent with broken automobile windows was found on Harper at the hospital. Anthony had replaced two windows of his Jeep within three days after the murder, and a witness from the repair shop noticed plastic sheeting on the seats.
¶ 4. Anthony was found guilty and his appeal has been deflected here.

DISCUSSION

1. Speedy Trial
¶ 5. Anthony challenges the court's denial of a motion to dismiss for failure to provide a speedy trial. Most of Anthony's argument focuses on a claimed constitutional error. There is reference to the statutory requirements as well, and thus we will discuss both kinds of claims.
¶ 6. These are the applicable dates.

03/28/99 Anthony arrested
10/12/99 Grand jury returns indictment
11/01/99 Capias executed
01/13/00 Motion for speedy trial
04/05/00 Motion for speedy trial
06/22/00 Continuance granted
11/15/00 Letter filed with clerk
02/05/01 Motion to dismiss (pro se)
02/08/01 Continuance granted
02/26/01 Motion to dismiss
04/10/01 Motion to dismiss for failure of
 speedy trial
05/21/01 Trial

A. Constitutional right to speedy trial
¶ 7. The United States Supreme Court has articulated considerations for judging whether the constitutional right to a speedy trial has been denied. Four factors are to be examined in light of the totality of the circumstances: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of right; and (4) the prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We examine each in turn.

(1) The length of the delay
¶ 8. Over two years passed between Anthony's arrest and his trial. A delay of more than eight months between those events creates a presumption of prejudice and obligates the court to consider the other three factors. Sharp v. State, 786 So.2d 372, 380 (Miss.2001).
¶ 9. We note that a long delay by itself does not create a denial of this constitutional right. Longer delays have survived challenge. See, e.g., Smith v. State, 489 So.2d 1389 (Miss.1986) (7 years); Barker v. *54 Wingo (5 years); Hughey v. State, 512 So.2d 4 (Miss.1987)(33 months).

(2) The reason for the delay
¶ 10. Among the reasons for the delays were continuances for DNA testing, plea negotiations between the parties, and agreed continuances. Neither party disputes that the time from arrest in March of 1999 through the obtaining of results from DNA testing of blood samples which became available in August of 1999 was tolled in favor of the State. Furthermore, plea negotiations were an important and lengthy contributor to the delay. Anthony's involvement in the plea bargaining caused some delay. Finally, Anthony admitted to four months of delays in continuances. "If the defendant is the cause of the delay, he cannot complain thereafter." Reed v. State, 506 So.2d 277, 281 (Miss. 1987). We find sufficient justifications for the delay as to prevent this factor from weighing against the State. At worst it would be neutral.

(3) The defendant's assertion of right
¶ 11. The docket reflects that Anthony filed a motion for speedy trial in January and April 2000, and filed motions to dismiss in April 2000, February 2001, and April 2001, the last being a few weeks before trial began. In addition, Anthony mailed a letter to the court in November 2000, which from statements during the sole transcribed hearing on motions appears also to have been a request for a speedy trial. There is only one ruling in the record on any of these motions. That occurred on the first day of trial, and after a brief oral argument a motion to dismiss for abridgment of speedy trial rights was denied. It is a party's duty to obtain rulings on motions and to ensure the completeness of the record. Gayten v. State, 595 So.2d 409, 413 (Miss.1992).
¶ 12. Motions that request dismissal on speedy trial grounds as opposed to seeking the court's assistance in requiring a trial have been found insufficient to constitute an assertion of the right under this Barker factor. Perry v. State, 637 So.2d 871, 875 (Miss.1994). At least three of the motions sought dismissal and not a trial.
¶ 13. We find no weight to this factor.

(4) The prejudice to the defendant
¶ 14. The right to a speedy trial affects these interests: (a) protect against oppressive pretrial incarceration; (b) minimize anxiety and concern of the defendant; and (c) limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. 2182. Incarceration alone is insufficient prejudice to warrant reversal. Birkley v. State, 750 So.2d 1245, 1252 (Miss.1999).
¶ 15. The only relevant prejudice argued is a general impact on the defense resulting from potential memory loss by witnesses. There is no specific allegation of a witness who was critical to the defense whose memory failed or availability was lost. Anthony has failed to demonstrate any prejudice other than that presumed under the first Barker factor.
¶ 16. After balancing the factors in the Barker analysis, we find that Anthony's constitutional right to a speedy trial was not violated.

B. Statutory right to speedy trial
¶ 17. By statute and absent good cause, the State must bring a defendant to trial within 270 days of the arraignment, excepting the period covered by continuances duly granted. Miss.Code Ann. § 99-17-1 (Rev.2000). From arraignment to trial was 430 calendar days.
¶ 18. Anthony admitted to four months of delays based on proper continuances. *55 This reduces the time from 430 days to 310 days. In addition, as plea negotiations broke down, the State properly set the case for the first available trial date, May 21, 2001. An overcrowded docket may provide good cause for delay by the State. Kinzey v. State, 498 So.2d 814, 817 (Miss. 1986). Thus, the time period from Anthony's motion to dismiss on February 26, 2001, to the date of trial was properly justified by the State, and reduces the total by 84 days to 226 days, well within the 270 day limit. Consequently, we hold that there was no violation of the statutory speedy trial right.

2. Admissibility of Prior Bad Acts
¶ 19. Anthony alleges error based on Rule of Evidence 404(b) and 403. During a hearing on pretrial motions, Anthony attempted to exclude evidence that the day before Harper died, he had threatened to kill her. The court did not rule at that time. "Well, threats made in conjunction with the March 23rd assault, of course, I understand.... If it fits within the framework of being that close to the incident, then, I feel like it does have relevance." Though he gave this initial reaction to the proposition, the trial judge did not rule on the motion in limine. He wanted to have the benefit of evidence of the proximity of the threat to the victim's death. When the witness who heard the threat later testified, that was the time to object and get a final ruling. No objection was made.
¶ 20. Failure to object is normally a waiver of an appellate issue of admissibility of that evidence. Here, evidence of a "bad act," i.e., the threat, that occurred prior to the crime being prosecuted was introduced. That evidence may be relevant to show motive, opportunity, intent, or other relevant fact. M.R.E. 404(b). Such evidence may be admitted unless its probative value is substantially outweighed by its prejudicial effect. M.R.E. 403. There is caselaw suggesting that an on-the-record balancing is required; a court should give an instruction informing jurors of the limited purpose of that evidence. McKee v. State 791 So.2d 804, 810 (Miss.2001).
¶ 21. We find no basis to reverse for failure of the trial judge to perform an on-the-record balancing or to give a limiting instruction when the defense does not even object to the evidence. We acknowledge that this was an important statement. There were no eyewitnesses to make a direct tie between Anthony and the murder. The evidence was relevant to show a motive or an intent by Anthony for the crime. Had an objection been made, quite possibly the trial judge would have found this to be proper Rule 404(b) evidence. Certainly the evidence was inculpatory, but the prejudicial effect that Rule 403 forces a court to weigh is only the unjustified harm to a party arising from evidence that might be given inappropriate weight or could otherwise pervert the fact-finding.
¶ 22. That the person charged with murder had only hours earlier threatened to kill the victim is clearly prejudicial to the defendant's chances for acquittal, but not prejudice in the sense of a skewing of the fact-finding. We also find significant probative value to the statement in showing intent or motive. Thus, though no objection was raised, admission of this evidence does not rise to fundamental error requiring plain error analysis.
¶ 23. Furthermore, if acts are so interrelated as to be a continuing occurrence, evidence of the earlier act is admissible to allow the jury to receive the complete story of the crime. Underwood v. State, 708 So.2d 18, 32 (Miss.1998). That Harper and Anthony had this confrontation *56 one day and Harper was killed the next is sufficiently close in time to be a continuing occurrence.
¶ 24. The admission of the evidence was not error.

3. Exclusion of Evidence under M.R.E. 403
¶ 25. Anthony's third assignment of error challenges the trial court's exclusion of evidence offered by the defense. Anthony intended to show that the victim, Harper, had been assaulted in 1997 by an unidentified individual driving a Ford Bronco. The vehicle is important because the eyewitness who watched someone who resembled Anthony dispose of Harper's body initially told the police that the person was using a Ford Bronco. As the witness developed his trial testimony however, he was less certain in identifying the make and model but was sure of its dark color and paneled sides, a description which matched that of Anthony's specific vehicle, which was a Jeep Cherokee.
¶ 26. The trial court excluded the evidence "under 403 relevancy, finding that the remoteness of the incident" rendered it of limited probative value. Rule 403 also allows exclusion when evidence will confuse the issues or mislead the jury. M.R.E. 403. Anthony argues that he is entitled to present any relevant evidence tending to exonerate him. Brown v. State, 464 So.2d 516, 520 (Miss.1985). That is too broad a rule. "While the accused enjoys wide latitude in the presentation of witnesses, it is within the discretion of the trial judge to exclude proffered defense testimony, especially when it is collateral to the issues at hand." Davis v. State, 680 So.2d 848, 850 (Miss.1996). The defense admitted that the prior assault was a collateral matter. "It is a completely separate case that clearly it was not [Anthony] who did it at that time...."
¶ 27. The evidence if believed would have shown that in 1997 someone in a Ford Bronco had assaulted Harper, while a witness to part of the 1999 crime thought that the vehicle then used was a Ford Bronco. It is also evident that despite the make and model description, the 1999 witness also described a vehicle similar in kind, color, and paneling as Anthony's Jeep. To be relevant, the evidence of an earlier assault would have needed to create suspicion that whoever may have harmed Harper in 1997 and who drove a certain vehicle, was still trying to harm Harper in 1999 and was also still driving the same vehicle. The uncertainties in the 1999 witness's description of the Ford Jeep were thoroughly explored by defense counsel, and to that extent the defense received the benefit of creating doubt through this witness.
¶ 28. On the other hand, to examine the 1997 incident would have injected a matter of questionable relevance. Two years had passed between the events; no evidence existed that someone in a Ford Bronco continued to harass Harper in the intervening time. The latter fact isolates the earlier event and makes it less probative of anything. We find no error in the trial judge's applying his judgment that the earlier event was too distant in time and the potential connection to Harper's death too speculative. Jackson v. State, 784 So.2d 180, 183 (Miss.2001) (appellate court is only to determine if the trial court abused its discretion in considering probative value and prejudicial effect).

4. Denial of motions for acquittal or for new trial
¶ 29. Anthony's final assignment of error is a challenge to the weight and sufficiency of the evidence. When a jury returns a guilty verdict, we may enter an acquittal only if, taking all evidence and *57 inferences in a light most favorable to the prosecution, we are convinced that no reasonable, hypothetical juror would find guilt. Tait v. State, 669 So.2d 85, 88 (Miss. 1996). Here, viewing all evidence in favor of the State, we note Anthony's threat to Harper on the night before she was killed that established motive or intent. Though one witness identified a different make and model vehicle than Anthony drove as the one in which Harper had been carried, the witness described a similar kind of vehicle and gave descriptions of certain features that matched Anthony's Jeep. Investigators found Harper's blood inside Anthony's vehicle. The safety glass found in Harper's clothes at the hospital was consistent with the account of Anthony's replacing broken windows in his Jeep three days later. The plastic sheeting would have avoided bloodstains in the Jeep. The State demonstrated that it was possible for Anthony's vehicle to have been present at the house at which Harper was discovered without leaving impressionable tire tracks. Given this evidence, and applying the appropriate inferences, we cannot hold it unreasonable for a jury to return a verdict against Anthony.
¶ 30. As to Anthony's motion for a new trial, we should affirm the denial unless the overwhelming weight of the evidence renders the verdict an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). The evidence is not of that caliber, and the trial court was well within its discretion to deny Anthony's motion.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE AS AN HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.