SOUTHWICK, P.J.,
Dissenting.
¶ 38. With respect for both the majority and the other dissenting opinion, I find the issue that divides the Court should be decided within a different analytical framework.
¶ 39. The other dissenting opinion would reverse because the prosecutor cross-examined a defense witness about whether she had been encouraged to perjure herself by defense counsel. The defendant made an appellate issue of whether a limiting instruction from the judge was required because of this suggestion. The other dissent does not agree with that characterization of the error. Instead, it finds that error arises from impugning the integrity of defense counsel. That undermined the right to effective counsel by casting counsel in an impermissibly negative light in front of the jury. The issue could only be pursued by the artificial mechanism of asking whether an unnamed person had encouraged falsehoods.
¶ 40. The majority accepts the defendant’s appellate approach that the issue is whether a limiting instruction was required to be offered sua sponte. It then finds that the absence of an instruction was at worst harmless error because it also finds that the evidence of guilt was overwhelming. I note that no one has identified just what such a limiting instruction would have said — perhaps, “even if *98 you find that defense counsel (or some unnamed person) may have sought to have one witness perjure herself, that does not mean others committed perjury.” Surely such an admonition or any other one serves no purpose., Once the issue is properly injected, I find no justified line to draw for the jurors in how far they should take the inferences that flow from that evidence.
¶ 41. With respect for the authors of each opinion, I take a different tack. If a proper predicate is laid, a witness is subject to being questioned concerning whether she has some form of bias that may be affecting her testimony. Under my reading of those rules, this evidence fits within the category of relevant bias evidence used to impeach a witness. Where I find error is with the failure to apply safeguards before introducing evidence of this volatility. I would reverse and remand.
¶ 42. Anderson was one of the last witnesses called by the defense. She testified quite briefly — -her direct testimony occupies only two pages of the transcript. It did not seemingly address any central issue of the case. As best as I can discern, the defense was using her testimony to describe some ambiguous actions by another possible perpetrator of the crime. It is in the context of this minor witness that the issue before us needs to be addressed.
¶ 43. I start with the manner in which this charge of pressure on a witness was injected into the case. The State attempted to get the defense witness Anderson to admit that counsel had encouraged her to lie. She denied that. She was then asked whether she had told Joseph Smith earlier that day about such encouragement. Anderson denied that too. The State later called Smith and asked him what Anderson had said. He answered that Anderson had claimed that the defense counsel was attempting to get her to “say something that I didn’t say.” There is some ambiguity in that phrase. Still, I find that it created a reasonable fact question about the following point: did Anderson claim to Smith that she had been pressured in some manner by the defense counsel to change her version of what she had witnessed? Anderson did not admit to testifying falsely, but at least what she said raised suspicions about, i.e., it “impeached,” the accuracy of her testimony.
¶ 44. Asking a witness whether she has in some manner been encouraged to give false testimony raises an inflammatory matter. For the State to raise that defense counsel himself may have sought to suborn perjury, unless there was a legitimate basis on which to make that allegation, suggests prosecutorial misconduct. Because the. matter is so volatile, the issue should be introduced outside the hearing of the jurors and the predicate laid. As just explained, the predicate did exist. I will review the remaining considerations on admissibility.

Design of Rules of Evidence as to impeachment

¶ 45. Impeachment of a witness on any basis that would draw testimony into legitimate question is permitted. M.R.E. 607. Five bases for attacking witness credibility are generally identified: (1) prior inconsistent statement, (2) witness character, (3) bias, (4) contradictions of the testimony through other evidence, and (5) ability -of witness to perceive, recall or narrate. 27 WRIght & Gold, Fed. Prao. & PeoC. § 6094, at 516. The federal courts have never had specific rules permitting impeaching on the last three categories, but the United States Supreme Court held that all traditional methods of challenging credibility were still available. Id. In 1989 the Mississippi rules gained an explicit section permitting impeaching a witness based on bias. M.R.E. 616 cmt.
*99 ¶ 46. Even before state Rule 616 was adopted, then, impeaching for bias was permitted. That is because Rule 607 allowed the impeaching of witnesses generally, without stating any limitation. M.R.E. 607. Unless something else in the rules specifically excluded bias-based impeachment, it was proper under the general authorization for relevant evidence. M.R.E. 402; see 27 WRIGHT & Gold, Fed. PRAC. & Proo. § 6092, at 487 (explains this reasoning for admitting bias evidence).
¶ 47. What needs to be kept in mind are that the specific categories of impeachment covered by the evidentiary rules have varying approaches to admissibility— prior inconsistent statement (M.R.E. 613), witness character (M.R.E.608), bias (M.R.E.616), and the character — related issues of a prior conviction (M.R.E.609) and religious beliefs (M.R.E.610). Impeachment based on character, or more precisely, on reputation testimony, is limited and extrinsic evidence is usually prohibited. M.R.E. 608(a) & (b). However, as one authority on the similar Federal Rules of Evidence has written, “bias is never classified as a collateral matter lying beyond the scope of inquiry, or as a matter on which an examiner is required to take a witness’s answer.” 2 WeiNstein’s Fed. Evid. § 607.04[1] (2000). Extrinsic evidence of bias is broadly permitted, as I will show.

Evidence Rule 616

¶ 48. The question of the bias of a witness may legitimately be pursued.
For the purpose of attacking the credibility of a witness, evidence of bias, prejudice or interest of the witness for or against any party to the case is admissible.
M.R.E. 616. This is not evidence of character, or of prior bad acts. This is allowing evidence that a particular witness for reasons of “bias, prejudice or interest,” may not be telling the truth.
¶ 49. What constitutes “bias” or “prejudice” is the next important issue. Threats, bribes, or other inducements to tell a certain story may properly be characterized as bias. Someone may be continually biased because of past attitudes or connections with a party or an issue. A witness instead may be situationally biased, in that the person is inclined to one side because of specific inducements. Professor Wig-more defined “bias” for purposes of impeaching witnesses as including “all varieties of hostility or prejudice against the opponent personally or of favor to the proponent personally,” “specific inclination ... produced by the relation between the witness and the cause at issue in the litigation,” and “corruption [which] is here to be understood as the conscious false intent which is inferrable from giving or taking a bribe or from expressions of a general unscrupulousness for the case in hand.” 3A Wigmore, Evidenoe § 945 (Chadbourn ed.1970), quoted in 27 Wright & Gold, Fed. Prac. & Proo. § 6095 at 517 (1990). A fourth classification has been noted, which is “coercion, intended to include any form of mental, emotional or physical duress or compulsion that overcomes a witness’ duty to tell the truth.” 27 Wright & Gold, Fed. Prao. & Proo. § 6095, at 517 n. 7. In a list of specific sources of bias, included are bribes and fear. Id. at 519-20.
¶ 50. As has been said, evidence of bias is always relevant since it undermines all the assumptions about witness testimony.[1] *100 Id. at 516 & 526. Regardless of category, bias may be explored through cross-examination and with extrinsic evidence. Another rule becomes involved if the bias arises from evidence of any form of bribery. That is reviewed next.

Evidence Rule W8

¶ 51. A more specific rule has been used when the issue is one of obstructing a criminal prosecution. Evidence Rule 408 generally bars proof of pretrial offers to compromise civil claims. There is a caveat in the rule that makes clear that evidence of financial pressure on criminal witnesses is admissible: “The rule also does not require exclusion when the evidence is offered for another purpose, such .as proving bias or prejudice of a witness, ... or proving an effort to obstruct a criminal investigation or prosecution.” M.R.E. 408. Under the nearly identical Federal Rule of Evidence 408, it has been concluded that evidence of “efforts to ‘buy off the prosecution or a prosecuting witness” is admissible. 2 WeiNStein’s Fed. Evid. § 408.08[6].
¶ 52. Therefore, depending on what the examination of the witnesses uncovered, evidence of efforts to suborn perjury by bribes or other pressures would have been relevant and admissible under one of these evidentiary rules. As shown in the majority opinion’s excerpts from the testimony, there never was any indication of how the counsel allegedly had tried to get the witness to tell her story in a certain way. Rules 607 and 616 are sufficient, with Rule 408 specifically relevant to bribery.
¶ 53. This analysis is to be distinguished from the general rules for presenting evidence of the character and conduct of a witness. See M.R.E. 404, 405 & 608. There, issues of what can be proved solely through questions to the witness and what can be shown through extrinsic evidence take center stage. There is a quite different right that allows introduction of extrinsic evidence when bias is the concern. Under Rule 616, evidence of the bias of a witness is admissible.

Rule 613

¶ 54. Once the witness Anderson denied having been encouraged by the defense counsel to lie, she was asked whether she had told Joseph Smith the contrary. She denied having said anything to Smith about counsel’s encouraging her to lie. When Smith himself was then called, he quoted what she had allegedly told him. That was a prior inconsistent statement of the first witness, which she was initially given an opportunity to admit, deny, or explain. However, I do not find that the specific evidentiary rule on prior inconsistent statements to be applicable. M.R.E. 613.
¶ 55. Rule 613 applies to prior statements being used to challenge the credibility of a witness on an issue relevant to the underlying case. The typical example is that a witness testified as to one version of relevant events, and a prior statement told a different story. If on the other hand the prior statement of that witness is being used to establish bias, another rule applies. The existence of bias is a question about state of mind. “Statements of a witness asserting that she is biased for or against a party are admissible over a hearsay objection on the grounds that they are offered to prove the witness’ state of mind.” 27 WRIGHT & Gold, Fed. PraC. & ProC. § 6095, at 517 n. 9. A hearsay rule allows admission of a declarant’s then-existing state of mind. M.R.E. 803(3).
¶ 56. Therefore, this prior statement was not just admitted for impeachment purposes. When Rule 613 is used general *101 ly to attack witness credibility with a prior inconsistent statement, the evidence is solely impeachment and cannot prove the matter asserted. But when the category is not witness credibility generally but bias, the prior statement can be used as substantive evidence of that bias. Rule 613 is not the door through which the evidence has been admitted; Rule 803(3) is. See 27 Whight & Gold, Fed. Prac. & ProC. § 6095, at 533 (distinguishes between admission of prior inconsistent statement to attack “credibility,” and introduction to show bias).

Rule JpOS

¶ 57. It was incumbent on the State to present a legitimate basis on which to make this volatile claim. I find that such evidence was provided in the form of the Joseph Smith’s testimony. He testified that the witness Anderson told him that defense counsel had “got me in here trying to say something that I didn’t say.” Though this unfortunately impugned the integrity of defense counsel, it was not inadmissible for that reason. This was relevant and admissible evidence.
¶ 58. What I find to be the extent of possible error here is that the line of valid inquiry was nonetheless so inflammatory that a legitimate issue of undue prejudice existed. Yes, a witness being encouraged to “say [at trial] something that I didn’t say” before trial is relevant evidence. It is also extraordinarily inflammatory when it is defense counsel himself who is implicated. The evidence is still relevant. Here, the witness whose out-of-court statement is at issue was an extremely minor one. However, the jury’s acceptance of the evidence of suborning perjury would likely cause them to doubt other defense witnesses as well.
¶ 59. I agree with the other dissent to this extent: to inject into a criminal trial the possibility that defense counsel himself is suborning perjury is potentially so fundamentally destructive that such evidence cannot be treated as just another item of impeachment. Indeed, if any counsel did what the prosecutor alleged, that is a basis for a mistrial, criminal charges, and a variety of other results. Those ramifications do not mean that the issue cannot be pursued. Indeed, it should be vigorously investigated.
¶ 60. The problem in this case was the method by which the inquiry was undertaken. In fairly blithe fashion, the prosecutor asked whether defense counsel had asked a witness to lie. The trial judge also appeared somewhat nonchalant concerning the seriousness of the charge.
¶ 61. Whenever an issue of a counsel’s attempt to suborn perjury exists, I conclude that the party with that concern should raise it out of the presence of the jury. A hearing should be held, with whatever witnesses desired by either side or the court being called to explore the charge. If the trial court concludes that there is a basis on which to believe an attempt to cause perjury was made by one of the counsel on the case, then unless lesser remedies appear adequate, consideration should be given to declaring a mistrial and of referring the matter for criminal and professional sanction.
¶ 62. If instead the trial court finds no reasonable basis on which to believe any such attempt was made, then findings to that effect should be entered. What further steps to take depends on whether the party with the concern still wishes to pursue it as impeachment of a witness. If the party agrees to drop the impeachment evidence, then nothing further is needed. However, the counsel who raised the issue may not wish to abandon the point. A criminal defendant has a constitutional right to impeach government witnesses. Davis v. Alaska, 415 U.S. 308, 316-17, 94 *102 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This would include the right to seek to convince a jury that the prosecution improperly sought to coerce witnesses, even if a trial judge did not accept that a substantial basis to believe the claim existed. The State would not have a corresponding constitutional right. It would have the rights granted under the Rules of Evidence, however, which are to have admitted relevant evidence that does not run afoul of the restrictions set out in the rules. Among those restrictions is that the probative value of relevant evidence be not greatly outweighed by the prejudicial impact of it.
¶ 63. I find no basis after such a hearing on which to deny the defense the right to pursue the impeachment if it desires to do so, even if the trial judge found insufficient grounds to believe that opposing counsel had sought to suborn perjury. A full evidentiary presentation to the jury on the matter by the State would also be allowed to counter the impeachment.
¶ 64. If the State wishes to override a trial judge’s conclusion after such a hearing and still use the impeachment evidence that perjury was suborned by defense counsel, then the admission should be controlled by comparing the probative value to the prejudicial effect.
¶ 65. It is true that trial counsel did not raise the issue of the Rule 403 balancing. The objection by defense counsel was simply that there was no basis on which to be asking these questions. The State then showed a valid basis. Counsel did not object that whatever probative value of bias that might be shown was too greatly outweighed by the prejudicial impact. See M.R.E. 403. I find no general obligation for a trial, judge unbidden to state orally his balancing of prejudice to probative value, though “a trial court is required to consider whether the probative, value of the questionable evidence is outweighed by undue prejudice.” McCullough v. State, 750 So.2d 1212, 1216(¶15) (Miss.1999). That just makes it necessary that the judge think about this. Indeed, since Rule 403 applies to all evidence, were an on-the-record balancing always needed, then every ruling on any objection that raises an issue of admissibility would have to include a statement ¿bout the balancing. I find no such mandate in the easelaw.[2]
¶ 66. I would place the matter before us today in the category of requiring not just an on-the-record balancing, but an actual separate hearing. The implications of the charge made by the State were serious enough that the failure to treat this outside the jury’s presence, with adequate fact-finding, was fundamental error that removes the need for a contemporaneous objection.
¶ 67. In the balancing that would occur when the State wishes to impeach despite a trial judge’s conclusions after a hearing, it would be relevant to determine whether the witness was a minor one. In addition, the strength of the foundation for the evidence would be relevant. Here, the witness Smith did not state that the earlier witness Anderson had told him that she had actually said something untruthful, but only implied that defense counsel had tried to get her to do so. A jury would be entitled to infer for purpose of determining bias that the attempt was successful since the witness was used, but that is not a necessary inference. The court might find the probative value too attenuated and the prejudice too great to permit introduction.
*103 ¶ 68. What sense to make of relevant, admissible evidence is ultimately for jurors, not for judges. There is an initial function for trial judges, though, which is to filter unfairly prejudicial evidence through proper procedural protections. I would reverse and remand for the failure to do so.
¶ 69. The majority finds the evidence overwhelming. I find the evidence contested. I do not believe that we can ignore that an insinuation of this magnitude oozed into the case even if there was substantial evidence on which a jury could rely to convict. There were also denials of Harris’s complicity on which the jury could have relied to acquit. This was an immeasurable distortion of the fact-finding process. To find it to be harmless error is to declare that the harm in this case can be confidently quantified. I do not feel so audacious.
McMILLIN, C.J., JOINS THIS SEPARATE WRITTEN OPINION.

. The assumptions as to all testimony are “(1) that the witness perceived the fact, (2) that he accurately recalls his perception, (3) that he truthfully states his recollection, and (4) that he expresses his testimony in a way that permits it to be understood by the jury in the general manner intended by the witness.” 27 *100 Wright & Gold, Fed. Prac & Proc. § 6092, at 487.

. There is some suggestion, but only occasional, that before admitting evidence of other bad acts under Rule 404, an on-the-record balancing must occur. Anthony v. State, 843 So.2d 51, 55 (Miss.Ct.App.2002). The nature of Rule 404 evidence makes it more of a candidate for sua sponte fact-finding on the balance than does most other evidence.