906 So.2d 73 (2004)
Thaddeus EDMONSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01088-COA.
Court of Appeals of Mississippi.
December 7, 2004.
*74 Michael Duane Mitchell, Pamela Lynn Huddleston, Gulfport, attorneys for appellant.
*75 Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
MYERS, J., for the Court.
¶ 1. On June 3, 2002, Thaddeus Edmonson was indicted by the grand jury of Jones County for two violations of inducement to influence a public official. Trial for the matter was held from March 31, 2003 through April 3, 2003 in the Jones County Circuit Court, Second Judicial District. Edmonson was convicted of the offenses and was sentenced to five years imprisonment, with two years suspended on post-release supervision with community service. Edmonson filed a motion for judgment notwithstanding the verdict or in the alternative a new trial, which was denied. It is from the conviction that Edmonson appeals, raising the following four issues:
I. WHETHER THE TRIAL COURT ERRED IN THE ADMISSION OF EVIDENCE.
II. WHETHER THE TRIAL COURT ERRED IN ITS STATEMENTS TO THE JURY.
III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR DIRECTED VERDICT.
IV. WHETHER THE TRIAL COURT IMPROPERLY LIMITED THE SCOPE OF CROSS-EXAMINATION OF THE STATE'S WITNESS, INFRINGING ON THE APPELLANT'S SIXTH AMENDMENT RIGHT.
¶ 2. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 3. In April 2001, Jayesh Bhakta, a financier and developer of hotels and motels, decided to construct a Days Inn and Suites hotel in the city of Laurel, Mississippi. The site upon which the hotel was to be constructed was located along Grandview Drive. The Grandview Drive property upon which Bhakta wished to construct the hotel was owned by Greg Rustin, a businessman and resident of Laurel. Bhakta contracted with Rustin to secure the subject property for construction. Bhatka then applied for a franchise with Days Inn and began processing the necessary paperwork and securing the proper permits to allow construction of the hotel. Upon applying for a franchise with Days Inn, it was determined that in order for construction of the hotel to be possible, Grandview Drive would have to be widened and improvements made in order to accommodate the hotel. The renovations which would be necessary included widening the road to three lanes, installing a traffic light, increasing sewage capacity, and increasing water delivery capacity. These renovations were referred to as the "Grandview Drive project" by all parties involved. Over the next several months, Bhatka met with the members of the Laurel city council, the Laurel mayor, as well as other Laurel officials who were involved in the decision making process surrounding the Grandview Drive project. After many meetings, many setbacks, and the withdrawal of his franchise rights by Days Inn, Bhatka decided that it was time to terminate the project.
¶ 4. Rustin, who was working closely with Bhatka in an effort to construct the hotel, received a telephone call in April, 2002 from Edmonson asking if Rustin would meet him at Shoney's restaurant in Laurel to discuss the Grandview Drive project. It was at this meeting where Edmonson first informed Rustin that as president of the Laurel city council, Edmonson was not going to allow the Grandview *76 Drive project to pass. Edmonson then informed Rustin that he would aid in passing and completing the Grandview Drive project for a payment of $10,000 to Edmonson. Rustin refused Edmonson's proposal and was contacted by Richard Cox, an investigator for the Mississippi Attorney General, asking Rustin for his cooperation in an investigation of Edmonson by making the requested payment to Edmonson. Rustin agreed and contacted Edmonson stating that he had changed his mind about Edmonson's request, and that he would be willing to pay $5,000 for his cooperation on the project. Edmonson agreed to Rustin's $5,000 proposal and the two met at Rustin's office on May 2, 2002. This meeting was recorded by investigators Richard Cox and Burt Wallace of the Mississippi Attorney General's office using a video camera and tape recorder hidden in Rustin's office. During this meeting, Rustin paid Edmonson $2,500, using state funds, as the initial payment of the $5,000 sum. The remaining $2,500 was to be paid at a later date. On May 6, 2002, an unrecorded conversation between Edmonson and Rustin took place, during which Edmonson requested an additional $1,000 payment to secure the votes of two additional council members. On May 7, 2002, a telephone conversation took place between Rustin and Edmonson which was recorded. Later that day, Edmonson and Rustin again met at Rustin's office where their meeting was again videotaped. During this meeting, Edmonson brought Rustin two letters detailing the progress which was being made on the Grandview Drive project. Edmonson and Rustin further discussed the requested payment of $1,000 to secure additional votes. Rustin refused to pay the additional $1,000 unless it could be paid directly to the council members. Rustin's request was denied. On May 9, 2002, Rustin and Edmonson again met at Rustin's office. During this meeting, Rustin paid Edmonson the remaining $2,500 Immediately after the meeting, Edmonson was arrested and charged with two counts of inducement to influence a public official pursuant to Mississippi Code Annotated § 97-11-53 (Rev.2000).
¶ 5. At trial, Edmonson defended the charges against him by contending that the payments received by Rustin were not bribes but were actually payments which were due for advertisements Rustin had placed in Edmonson's newspaper, News Plus. Edmonson argued that portions of the conversations between he and Rustin which took place in the hallway outside of Rustin's office were not recorded. Edmonson contends that it was during these conversations that Rustin and Edmonson discussed Rustin placing advertisements in Edmonson's newspaper. Edmonson mailed Rustin via certified mail, a receipt from News Plus dated May 14, 2002, in the amount of $2,502 for payment of the advertisement Rustin and he allegedly discussed prior to the recorded portion of their meetings. Though an advertisement for Rustin's subdivision project appeared in the May edition of News Plus, both Rustin and his assistant, JoAnn Bird, testified that the company does not advertise the subdivision and that the company has never advertised in News Plus newspaper. Edmonson further defended the charge against him by showing that the 2003 budget included funds to be allocated for the Grandview Drive project.
¶ 6. The jury was charged with weighing the evidence and the testimony to arrive at their decision. In performing their duties, the jury determined that Edmonson was guilty of inducement to influence a public official in violation of Mississippi Code Annotated § 97-11-53 (Rev.2000). Edmonson was sentenced to five years imprisonment, with two years of the sentence suspended. Edmonson filed a *77 unsuccessful motion for judgment notwithstanding the verdict or in the alternative a new trial. Aggrieved by the sentence of the trial court, Edmonson appeals.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN THE ADMISSION OF EVIDENCE.
¶ 7. Edmonson argues that the trial court erred in allowing testimony regarding his prior bad acts in violation of Mississippi Rule of Evidence 404. Edmonson further argues that the prejudice created by the admission of this testimony outweighed any probative value, in violation of Mississippi Rule of Evidence 403.

STANDARD OF REVIEW
¶ 8. The standard of review for admission or exclusion of evidence is abuse of discretion. Smith v. State, 839 So.2d 489, 496(¶ 17) (Miss.2003) (citing Stallworth v. State, 797 So.2d 905, 908(¶ 8) (Miss.2001)).

DISCUSSION
¶ 9. Edmonson's first assignment of error is that the trial court improperly admitted testimony of other bribes paid to Edmonson. Edmonson contends that the testimony which was presented was violative of Rule 404(b) of the Mississippi Rules of Evidence which states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Edmonson further contends that by allowing the testimony concerning previous bribes, the trial court violated Rule 403 of the Mississippi Rules of Evidence by failing to conduct a proper balancing test to weigh the probative value against the prejudicial effect of the testimony.
¶ 10. The testimony at issue was that of Rustin, which was contained on the videotape offered into evidence and shown to the jury. During the meetings between Rustin and Edmonson, which are depicted on the videotape, Rustin makes reference to a prior $1,500 payment which he made to Edmonson for his help in attempting to secure construction contracts. Further, Rustin mentions a prior $1,000 payment to Edmonson as a loan so that Edmonson's vehicle would not be repossessed. Rustin also references Edmonson's solicitation of Bhatka for a $10,000 investment in his newspaper business to gain Edmonson's support for the Grandview Drive project. Reference to Edmonson's solicitation of Bhatka for $10,000 was made in reference to Edmonson's asking, or starting price to gain his support for the Grandview Drive project. From that asking price, the parties agreed that $5,000 would be sufficient in light of the prior payments of $1,000 and $1,500 and the results of these payments.
¶ 11. Edmonson argues that the trial court erred by allowing mention of these occurrences because they constitute prior bad acts, in violation of Rule 404(b) of the Mississippi Rules of Evidence. While Edmonson is correct in his assertion that evidence of prior bad acts which did not result in a conviction are generally inadmissible, he fails to recognize a well-established exception to this rule. The Mississippi Supreme Court has long held that "[p]roof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." Neal v. State, 451 So.2d 743, 759 (Miss.1984). The State, in *78 presenting its theory of the case, has a legitimate interest in making sure that its theory is presented in a rational and coherent manner. Brown v. State, 483 So.2d 328, 330 (Miss.1986). As Rustin's statements on the video are part of the conversation regarding the bribes at issue and how a meeting of the minds occurred regarding the price to be paid, the video may not be edited in any fashion to redact these portions without causing great confusion to the jury. These statements are intimately intertwined with the ultimate issue, namely, the amount of money Rustin would have to pay Edmonson for his support of the Grandview Drive project. In conveying his or her story to the jury, evidence of other wrongs by the defendant may be required. Sykes v. State, 749 So.2d 239, 244(¶ 21) (Miss.Ct.App.1999). In making this determination, we find that the trial judge did not abuse his discretion by allowing such testimony and, therefore, find this issue to be without merit.
¶ 12. Edmonson further argues that allowing such evidence was in violation of Rule 403 of the Mississippi Rules of Evidence, as the prejudicial effect of the statements outweighed any probative value. As has been previously stated by the Mississippi Supreme Court, "[c]ertainly the evidence was inculpatory, but the prejudicial effect that Rule 403 forces a court to weigh is only the unjustified harm to a party arising from evidence that might be given inappropriate weight or could otherwise pervert the fact-finding." Anthony v. State, 843 So.2d 51, 55(¶ 21) (Miss.2002). Though the statements made on the videotape would tend to weigh against Edmonson, such statements were necessary to fully convey the story to the jury in any meaningful way. Thus, the probative value of the statements outweighed any prejudicial effect which they may have had. Therefore, we find Edmonson's argument to be without merit.

II. WHETHER THE TRIAL COURT ERRED IN ITS STATEMENTS TO THE JURY.
¶ 13. Edmonson's next assertion of error is that he was prejudiced by the remarks made by the trial court to the jury prior to their deliberations explaining to them that another jury would be present to hear another case which appeared on the court's docket, but that the court would try be quiet so as not to disturb the jury during their deliberations. Edmonson contends that these comments violated his Fourteenth Amendment due process right under the United States Constitution, as well as his due process right under Section 14 of the Mississippi Constitution by giving the jury a time limit for their deliberations.

STANDARD OF REVIEW
¶ 14. "It is within the sound discretion of the trial judge as to how long he will keep the jury in deliberation, and this discretion will not be reviewed on appeal unless there has been a clear abuse of discretion." Gordon v. State, 149 So.2d 475, 477 (Miss.1963).

DISCUSSION
¶ 15. Edmonson cites a plethora of cases holding that it is reversible error if the judge forces the jury into a hasty decision by informing them he is leaving for the weekend and forcing the jury to stay the weekend, threatening to hold the jury in deliberations until midnight, asking the jury to hurry with their verdict, and holding a jury over the weekend for deliberations. While in those instances reversal would be the proper remedy, the statements made in the case sub judice do not rise to that level. The statements which *79 Edmonson contends were improper communications are as follows:
THE COURT: All right. I am going to go ahead this afternoon after you all leave and pass on the instructions so that when you do get back tomorrow, we can go ahead and read the instructions and let the attorneys give their summations. Then you can retire. [A]fter you do that, I have another case to start trying tomorrow. We suppose [sic] to start trying that tomorrow. Anyway, just be back at 9:00. I'm going to start another trial at 1:00 tomorrow while you are deliberating. If you are through by deliberating [sic] by then, that's fine. If you're not, then we'll start it whenever you to get [sic] through deliberating.
THE COURT: Members of the jury, you can go back into the jury room and select the person you want to be your foreperson. Start your deliberations. We'l [sic] be out here. By the way, I have another trial that I'm going to start at one o'clock this afternoon. I'll be hearing motions in that trial up until the time we start that trial. I have another jury coming in at one o'clock. So we're going to try and keep it quiet out here. If you need anything, just knock on the door and the Bailiff will get it for you.
¶ 16. The record further shows that the trial judge stated to the jury "you'll be able to go back into the jury room and deliberate for as long as you need to consider a fair and impartial verdict in this case." The statements of the trial judge seem to indicate a desire to explain court procedure to the jury as well as keeping the jury informed of what would be going on in the courtroom while they were in deliberation. This appeared to be an effort to minimize any problems, not an attempt to put a time limit on deliberations. We find these statements to be neutral in nature and not made for the purpose of limiting the duration of jury deliberation. Finding no abuse of discretion in the trial judge's statements to the jury, this issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR DIRECTED VERDICT.

STANDARD OF REVIEW
¶ 17. We must judge the sufficiency of the evidence by accepting as true all evidence, as well as all reasonable inferences which may be drawn from the evidence, in the light most favorable to the State, as the non-moving party, and in doing so, if the record is sufficient to support the jury's guilty verdict, we are constrained as a matter of law, well-established in Mississippi, to uphold the trial court's denial of a motion for directed verdict. Miller v. State, 875 So.2d 194, 198(¶ 6) (Miss.2004).

DISCUSSION
¶ 18. Edmonson next argues that the State failed to prove each element of its case-in-chief and therefore, no fair-minded juror could have found him guilty of the crime charged. Edmonson contends that in order for the State to prove its case-in-chief, it must be demonstrated that Edmonson accepted the money as an inducement to accomplish the approval of the Grandview Drive project. Edmonson contends that a reasonable and fair-minded juror could not find that he accepted payment as an inducement since Laurel Mayor Susan Vincent, Councilwoman Anne Clayton, and Edmonson himself testified that the delay was caused by Bahtka's failure to submit the proper paperwork. Edmonson further argues that the jury's verdict was improper because the "official act" element of the indictment was not satisfied. Edmonson contends that the *80 "official act" Rustin sought by his payment, was for the city to approve the widening of Grandview Drive.
¶ 19. At trial, the State presented testimony of Rustin that the city council was responsible for the delays in getting the Grandview Drive project approved. Further, the State presented evidence that Edmonson called a meeting on May 8, 2002, in his official capacity as president of the Laurel city council, to discuss the Grandview Drive project.
¶ 20. Clearly, both Edmonson and the State presented credible evidence as to the cause of delay in the Grandview Drive project. The well-established law in Mississippi, as stated by the Mississippi Supreme Court is as follows:
The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore, unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this Court will not set aside the verdict of a jury.
Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611, 617(¶ 20) (Miss.2001). As the videotaped meeting clearly shows, Edmonson accepted payment of $5,000, and acknowledged having previously accepted an additional $2,500, in return for his aid in securing the city council's approval of the Grandview Drive project. In trying to secure the council's approval, Edmonson, as an official act, called a May 8, 2002 meeting and presented Rustin documents showing the progress he had made on the project during their May 9, 2002 meeting. As reasonable and fair-minded jurors could believe the testimony of Rustin as well as the testimony presented on the videotape, we will not set aside their verdict. Therefore, this issue is without merit.

IV. WHETHER THE TRIAL COURT IMPROPERLY LIMITED THE SCOPE OF CROSS-EXAMINATION OF THE STATE'S WITNESS INFRINGING ON THE APPELLANT'S SIXTH AMENDMENT RIGHT.

STANDARD OF REVIEW
¶ 21. "The scope of cross-examination, though ordinarily broad, is within the sound discretion of the trial court and the trial court, possesses inherent power to limit cross-examination to relevant matters." Smith v. State, 733 So.2d 793 801(¶ 37) (Miss.1999).

DISCUSSION
¶ 22. Edmonson next argues that he was not able to fully cross-examine Rustin, which violated his Sixth Amendment right to confront witnesses. At issue, Edmonson sought to inquire about other lawsuits in which Rustin was involved. During an in-chambers proceeding, the trial court notes that many of the questions to be asked dealt with matters that were based upon other pending trials. The trial court acted properly in making its rulings on the proposed questions. In making its determination, the court first looked at Rule 609(a) of the Mississippi Rules of Evidence. Rule 609(a) reads as follows:
(a) General Rule. For the purpose of attacking the credibility of a witness (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party and

*81 (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.
The trial court determined that Rustin had not been convicted of any of the wrongdoings for which defense counsel wished to impeach his testimony. Rustin had not been convicted of any crimes which would be punishable by death or imprisonment in excess of one year, nor he been convicted of a crime which involved dishonesty or false statement. The trial court ruled that the testimony sought to be elicited from Rustin would not be allowed by Rule 609 and found further that the testimony would be unduly prejudicial, in violation of Rule 403 of the Mississippi Rules of Evidence. As the trial judge's ruling was in accordance with the Mississippi Rules of Evidence, no abuse of discretion was present. Therefore, we find this issue is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF INDUCEMENT TO ACCOMPLISH AN OFFICIAL ACT INVOLVING PUBLIC FUNDS AND PUBLIC TRUST, BRIBERY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THREE YEARS TO SERVE AND TWO YEARS SUSPENDED ON POST-RELEASE SUPERVISION WITH COMMUNITY SERVICE IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.